# SUPREME JUDICIAL COURT

##### FOR THE

## COUNTIES OF HAMPSHIRE, FRANKLIN AND HAMPDEN, SEPTEMBER TERM 1844, AT NORTHAMPTON

---

##### PRESENT

Hon. LEMUEL SHAW, Chief Justice.
Hon. SAMUEL S. WILDE,
Hon. CHARLES A. DEWEY, } Justices.
Hon. SAMUEL HUBBARD,

---

### NORTHAMPTON PAPER MILLS vs. DAVID AMES & another.
### THE SAME vs. THE SAME.

Where a person in possession of mortgaged premises, claiming under the mortgagor, refuses to yield the possession to the mortgagee, upon his entry after condition broken, the mortgagee may maintain an action of trespass against him, for mesne profits, although the entry may not have been sufficient, under Rev. Sts. c. 107, for the purpose of foreclosure.

Two actions of trespass *quare clausum*, to recover mesne profits. In the first action, damages were demanded from March 24th 1843 to August 5th 1843 ; and in the second, from August 5th 1843 to January 27th 1844.

At the trial before *Dewey*, J. it appeared that the plaintiffs, being owners of the premises described in the writs, sold them to John Ames on the 1st of May 1839, and at the same time received from him a mortgage deed thereof, to secure payment of the purchase money. The condition of this deed was broken before the 24th of March 1843. The defendant, David Ames,

was in possession of said premises, under said John Ames, and the defendant, Joseph C. Parsons, was agent of said David Ames in the management of the paper mill on said premises.

The plaintiffs, to show their possession of the premises, introduced the following testimony :

J. H. Butler testified, that on the 24th of March 1843, he and S. F. Lyman, (who were stockholders in the plaintiff corporation,) with W. W. Partridge, went into the paper mill, and that he, in the presence of said Lyman and Partridge, declared that he entered for the purpose of taking possession, under the mortgage of John Ames to the plaintiffs, for condition broken ; that he took possession of the mill, machinery, tools and implements on the premises ; that he took the key out of the door of the mill, and gave it to said Lyman, and requested him to keep possession for the witness, while he went away :    That he and said Partridge then went into a house on said premises, occupied by the defendant Parsons, and told him that he (the witness) entered as agent of the plaintiffs, for the purpose of taking possession under the aforesaid mortgage, and requested him to withdraw from the premises, or remove out of the house, and informed him that he (the witness) had taken possession of the paper mill, and was going to take possession of the boarding-houses on the premises :    That he and said Partridge then went into a large house, called the boarding-house, and took possession thereof in the same manner as of the house occupied by said Parsons ; that he told the woman who kept the boarding-house that he had taken possession of the house as agent of the plaintiffs, and that she must leave it, or, if she remained, must pay rent to the plaintiffs :    That he then returned to the paper mill, and requested said Partridge to keep possession thereof and of the rest of the premises :    That the witness and said Lyman then went into the store on the premises, and told the defendant Parsons that he entered as agent of the plaintiffs, to take possession under said mortgage, and that he (Parsons) must leave the premises, must move out, and shut up the mill, and shut down the gate ; and that the plaintiffs were disposed to make a proposal, and that if he (Parsons) would go to the

plaintiffs' counsel and get a proposal, a satisfactory arrangement could probably be made ; that if he would do so, he might use the mill till the next Saturday night :    That Parsons said he would do so, and that he had no objection to shutting down the gates :    That the witness then left the premises in the possession of said Partridge :    That Partridge brought him the keys on the 8th of April 1843, and that he went to the premises on the 10th of April, and found the mill in operation ; tried to shut down the head gate, but did not succeed ; went to the boarding-house, and found there the woman who kept it, and ordered her to leave immediately, and she told him that Parsons directed her to stay :    That he went to the store and told Parsons to leave the premises and shut up the mill ; and that Parsons said he should take his own time for it :    That nothing was said or done, indicating any opposition to the taking of possession of the premises by the witness.

The witness also testified that he, with said Partridge, went again to the premises on the 5th of August 1843, went into the mill, store, boarding-house, and house occupied by Parsons, and took possession, as agent of the plaintiffs, under said mortgage, for condition broken, and left said Partridge in possession of the premises ; that Parsons forbade the witness to take possession of the store or of the house which he (Parsons) occupied :. That there were several other occupied houses on the premises; and that the mill was given up on the 27th of January 1844.

W. W. Partridge confirmed most of the facts stated by Butler, the other witness, and also testified that he locked the mill, &c. and took the keys, on Saturday night, April 8th ; that on the 17th of April, he found the mill open and in operation, and tried to shut the water gates, but was unable, and left the mill running.

Upon this testimony, the judge stated that he should instruct the jury "that the plaintiffs might acquire a sufficient possession to maintain their actions, by making an open and peaceable entry upon the premises mortgaged, although the same were in the possession of persons claiming under the mortgagor, if said entry was not opposed by the mortgagor or those acting under

or for him; and that if the party in possession knew such entry was about to be made, and did not oppose it, the entry would be lawful, and after such entry was in fact made, the plaintiffs' right of possession would not be affected, if, on a subsequent day, the party holding under the mortgagor had taken a different view of the course that might be expedient for him to adopt for the purpose of securing the further enjoyment and possession of the premises, and had thereupon undertaken to assert adverse rights of possession, and had then insisted upon maintaining his possession." The judge was also of opinion, that if the statements of said Butler and Partridge were true, they furnished sufficient evidence of possession in the plaintiffs to maintain the present actions.

The actions were taken from the jury, by consent of the parties, under an agreement that the defendants should be defaulted, and damages be assessed by a referee, if in the opinion of the whole court the actions, or either of them, be maintainable upon said evidence; and that if neither of said actions be maintainable, the plaintiffs should become nonsuit, or a new trial should be ordered, as the court might direct.

*R. A. Chapman,* for the defendants. The defendant Ames was tenant under the mortgagor, after condition broken, and had a right to remain in possession till sixty days after judgment against him; and the other defendant was in possession as mere servant of Ames. The plaintiffs, by their entry, did not obtain such a possession as entitled them to maintain trespass against these defendants. In Stearns on Real Actions, 44, 45, it is said that an entry into a house to which land appertains, with a claim of the whole, will revest the seizin of the land as well as the house; and that an entry upon any part of the land, claiming the whole, is sufficient. It follows, of course, that the tenant's possession need not be disturbed by such entry. But this doctrine does not apply to the case of a mortgage. The mortgagee's entry, after condition broken, must be a dispossession of the tenant. The Rev. Sts. *c.* 107, § 1, contemplate a possession gained by entry; and § 2, as to witnesses, &c., applies to vacant lands, where there is no tenant to give possession

Or, if it applies to a case like the present, then there were not two competent witnesses to the plaintiffs' entry.

Before condition broken, a mortgagee may make an entry, as against the mortgagor and those holding under him, in the manner above mentioned by Stearns. So, after condition broken as against a mere wrong doer. But the Rev. Sts. *c.* 107 put the mortgagee, and the mortgagor and those claiming under him, on new grounds, after condition broken, and require actual possession, with the tenant's consent, or at least not against his will. See the commissioners' note to § 7 of *c.* 107. Stearns on Real Actions, 35.

In *Smith* v. *Shepard*, 15 Pick. 147, and *Stone* v. *Patterson*, 19 Pick. 476, the tenants were completely dispossessed, as they yielded to the mortgagee's entry, and agreed to pay rent to him.

In the cases at bar, the entry was informal, and did not disturb the possession of the tenants, though it would have been sufficient, as against a disseizor, to have entitled the plaintiffs to maintain trespass. But if it was sufficient, as against the defendants, then no mortgagor can ever resist the entry of the mortgagee after condition broken, and the provisions of Rev. Sts. *c.* 107 are rendered futile. The separate possession of the occupants of the different houses was not affected; or if it was, they all might have been sued in this action, without having any knowledge of the plaintiffs' entry.

Parsons did not assent to the plaintiffs' possession, but opposed it, within the meaning of Rev. Sts. *c.* 107, §1. Any thing that indicates an intention to remain in possession is an opposition to the mortgagee's entry, so as to prevent his gaining any right by a mere entry.

If forcible possession could not be taken, then the defendant Ames did not yield the possession, but did every thing to maintain his own possession; and Parsons had no authority to yield it in Ames's behalf, as he was merely agent at the mill. Story on Agency, §§ 58, 60, 78, 83, 87. *Odiorne* v. *Maxcy*, 13 Mass. 178.

*Forbes*, for the plaintiffs. A mortgagee has the same rights

1*

against the lessee of the mortgagor as against the mortgagor himself, and may enter upon him before condition broken (if there be no written agreement to the contrary) as well as after, and may sue a writ of entry against him, without giving him notice to quit.  8 Mass. 554.  *Mayo* v. *Fletcher*, 14 Pick. 530 *Fitchburg Cotton Manuf. Corp.* v. *Melven*, 15 Mass. 270. *Keech* v. *Hall*, 1 Doug. 21.  *Colman* v. *Packard*, 16 Mass. 39.  *Blaney* v. *Bearce*, 2 Greenl. 132.  The mortgagee, by taking of such lessee the interest on the mortgage debt, or by giving him notice to pay the rent to him, does not make the lessee his tenant, nor prevent his treating the lessee as a trespasser.  *Doe* v. *Cadwallader*, 2 Barn. & Adolph. 473.  *Evans* v. *Elliot*, 9 Adolph. & Ellis, 342.  Neither the mortgagor nor his lessee is, strictly speaking, even tenant at will to the mortgagee ; he is not entitled to emblements, nor to notice to quit. He is tenant at sufferance.  14 Pick. *ubi sup.*  *Moss* v. *Gallimore*, 1 Doug. 279.  Co. Lit. 57 *b*.  Com. Dig. Estates by Grant, I. 1.  *Hyatt* v. *Wood*, 4 Johns. 150.  *Wood* v. *Hyatt*, 4 Johns. 313.  *Thunder* v. *Belcher*, 3 East, 449.  *Partridge* v. *Bere*, 5 Barn. & Ald. 604.  *Pope* v. *Biggs*, 9 Barn. & Cres. 253. 1 Smith's Leading Cases, 297.  2 Wooddeson, 153, *note (s.)*

The plaintiffs' entry, declaring that possession was taken for condition broken, and taking the keys, &c. were sufficient to enable them to maintain trespass.  *Butcher* v. *Butcher*, 7 Barn. & Cres. 399.  *Dorrell* v. *Johnson*, 17 Pick. 266.  For though the defendants did not quit the possession, yet "where two be in one house, or other tenements, and the one claimeth by one title, and the other by another title, the law shall adjudge him in possession that hath right to have the possession of the same tenements."  Lit. § 701.  If the mortgagor withstand the mortgagee's entry, he may be treated as a trespasser or as a disseizor, at the mortgagee's election, and may be sued in trespass or a writ of entry.  *Newall* v. *Wright*, 3 Mass. 152.  *Reed* v. *Davis*, 4 Pick. 216.  And this doctrine is not altered by the Rev. Sts. *c*. 107.  The provisions in that chapter, as to proceedings after condition broken, have reference only to foreclosure.  No negative words are used, and no common law

right taken away. An entry that is not sufficient for the pur pose of foreclosing the mortgage is therefore sufficient for other purposes. 2 Dwarris on Sts. 639. And so it has been adjudged. *Welch* v. *Adams*, 1 Met. 494. The entry, however, in the present case, was according to the provisions of Rev. Sts. *c.* 107, as to foreclosure ; and the evidence shows that there was an express consent to the entry. But it is not necessary for the plaintiffs to support this ground, in order to recover in these actions.

Wilde, J. These two actions were tried at the same time, and both depend on the rulings of the presiding judge at the trial ; and we think it very clear that the rulings were in every respect correct.

The plaintiffs had the legal title in the *locus in quo*, under a deed of mortgage, and the defendants were tenants of the mortgagor. And it was proved, that before the trespasses complained of in the plaintiffs' declarations, they entered upon the mort gaged premises for condition broken ; and that, before commencing their first action, they entered again ; and we consider both those entries as lawful, and that the legal possession was thereby in the plaintiffs.

It is objected by the counsel for the defendants, that they were not dispossessed by the first entry, but continued to have the actual possession ; and that the plaintiffs cannot maintain trespass, until after an eviction or actual dispossession. But we are of opinion that the plaintiffs might elect to consider the defendants as trespassers, after their refusal to quit, as they might consider them as disseizors, and in a writ of entry evict them. And if the defendants refuse to quit, and their continued occupation against the will of the plaintiffs would amount to an actual disseizin ; still the plaintiffs by their subsequent entry became lawfully reseized, and had a right to maintain trespass for the mesne profits, without resorting to a writ of entry. It was so decided, and upon well settled principles, in *Putney* v. *Dresser*, 2 Met. 583.

It was however objected, that the subsequent entry of the 5th of August was not legal, because the plaintiffs' agent was

forbidden by one of the defendants to take possession    But there is no ground for this objection.    The defendants had no right of possession, and consequently had no right to resist the plaintiffs' entry.

Another objection was, that the plaintiffs' first entry for condition broken was not made in the presence of two competent witnesses, and was therefore not a valid entry for the purpose of foreclosing the right of redemption.    We consider this objection also as entirely unfounded.    It is immaterial whether the entry was, or was not, valid for the purpose of foreclosure. The entry was lawful, and would have been so if it had been made before the condition was broken.

We are therefore clearly of opinion that the rulings of the court, upon the whole matters, were correct, and that the plaintiffs are entitled to recover in both actions.    According to the agreement of the parties, the defendants are to be defaulted.